IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY A. LAGATTA,           )
          Plaintiff,           )
                               )
     v.                        )     Civil Action No. 08-1268
                               )
THE PENNSYLVANIA CYBER         )
CHARTER SCHOOL,                )
                               )
          Defendant.           )

MEMORANDUM

Gary L. Lancaster
Chief District Judge.                        June 26, 2010

     This is an action in disability discrimination.

Plaintiff, Kimberly LaGatta (hereinafter "Ms. LaGatta"), alleges

that defendant, the Pennsylvania Cyber Charter School ("Cyber

School"), terminated her because of bipolar and failed to

reasonably accommodate her in violation of the Americans with

Disabilities Act of 1990 (hereinafter "ADA"), 42 U.S.C. § 12101 et

seq. Cyber School has moved for summary judgment, contending that

Ms. LaGatta was not fired on the basis of either her perceived or

actual disability, and that she never requested an accommodation.

     Ms. LaGatta counters that Cyber School knew about her

disability or regarded her as disabled because her mother told the

director of human resources that she was bipolar. She further

argues that once Cyber School learned that she was bipolar, it had

a duty to engage in an interactive process instead of firing her.

     For the reasons to follow, Cyber School's motion will be

granted in part and denied in part.

I.    BACKGROUND

      Unless otherwise indicated, the following material facts
are undisputed.   We construe all other facts in the light most
favorable to Ms. LaGatta, the non-moving party.

      Kimberly LaGatta is from Aliquippa, Pennsylvania.  Cyber
School is an online K-12 education provider for approximately 9,000
students.     Its   principal   place   of   business   is   Midland,
Pennsylvania.

      Ms. LaGatta received an initial diagnosis of depression
in 1991.[1]  In 2005, Ms. LaGatta began working for defendant as a
teaching assistant. At the time of her hiring, Ms. LaGatta did not
inform anyone that she needed an accommodation. In April 2006, Ms.
LaGatta  transferred  to  a  new  position  as  a  call  center
representative in the customer call center, where she worked under
Brian LaQuinta.   In that position, Ms. LaGatta took telephone calls
for the Tech Department.    In October 2006, Ms. LaGatta told Mr.
LaQuinta that she was going through a bad time, but she did not
tell him that it was because of depression. [Doc. No. 24, Ex. 2,
pp. 40-41].

      In March 2007, Mr. LaQuinta promoted Ms. LaGatta to the

_____

[1]

It is unclear from the record whether she was still receiving
treatment for depression during her employment with Cyber
School.  Ms.  LaGatta  has  produced  no  medical  records  or
doctor's reports for the court's consideration.

2

position of call center coordinator. In that capacity, Ms. LaGatta supervised the call center representatives, kept track of leave time, handled personnel issues and trained representatives on new software. Once again, Ms. LaGatta did not inform Mr. LaQuinta or anyone else at the Cyber school that she needed any type of accommodation. She also did not inform anyone in management that she had any type of disability, or that she was taking any medication. [Doc. No. 24. Ex. 2, pg. 34-42]. She did, however, mention to several other employees in the Call Center that she had difficulties with depression, one of whom, Judy Anthony, later became her supervisor. [Id.]

On July 17, 2007, Ms. LaGatta had a meeting with Mr. LaQuinta during which she requested to be transferred to the admissions department. Ms. LaGatta told Mr. LaQuinta that she no longer felt comfortable working as a supervisor because she did not feel she had Mr. LaQuinta's support when dealing with her subordinates. She also reported having difficulty working with her coworkers. Ms. LaGatta did not tell Mr. LaQuinta that her request was based upon her bipolar disability or any medical condition. [Doc. No. 24, Ex. 2, p. 56]. Mr. LaQuinta removed Ms. LaGatta from her position as call center coordinator and replaced her with Judy Anthony, who had formerly worked under Ms. LaGatta. He also denied Ms. LaGatta's requested transfer to the admissions department. Ms. LaGatta returned to her former position as a call center

representative.

On Wednesday, August 22, 2007, Mr. LaQuinta and Ms. LaGatta had another meeting, at which Mr. LaQuinta discussed several disciplinary issues with Ms. LaGatta, including: 1) her talking on her cellular phone at work for extended periods of time; 2) taking two breaks in one afternoon; and 3) complaints that Ms. LaGatta continued to act like call center coordinator despite her demotion. [Doc. No. 24, Ex. 3, p. 62]. Ms. LaGatta informed Mr. LaQuinta that she felt her experience could be better used elsewhere, and of her desire to be transferred to the Cyber School's Harrisburg office. Ms. LaGatta told Mr. LaQuinta that she no longer felt comfortable working in the office because she had taken a demotion and because she felt that Judy Anthony was portraying her in a bad light to her supervisors. During the meeting, Ms. LaGatta never requested or discussed a need for an accommodation for any health condition, nor did she inform Mr. LaQuinta that she was depressed or having a difficult time. [Doc. No. 24, Ex. 3, p. 69]. At no point did Mr. LaQuinta inform Ms. LaGatta that her job was in jeopardy.

That same day, Ms. LaGatta also had a meeting with Dr. Nicolas Trombetta, the Chief Executive Officer of Cyber School. Dr. Trombetta asked Ms. LaGatta about complaints he had been hearing about the call center, and about her interest in possibly working in the Harrisburg office. At no point did he inform Ms.

4

LaGatta that her job was in jeopardy, nor did Ms. LaGatta inform him that she had any type of health problems.

Around 2:00 p.m. on Friday, August 24, 2007, Ms. LaGatta received a telephone call from Brenda Starr, Dr. Trombetta's secretary, advising her that she had missed a meeting with Dr. Trombetta scheduled for 8:00 a.m. that morning. At the time of the phone call, Ms. LaGatta was driving to Harrisburg, Pennsylvania, to "check[] out the area." [Doc. No. 24, Ex. 5, p. 153]. Ms. LaGatta told Ms. Starr that she was unaware that any meeting had been scheduled. [Doc. No. 24. Ex. 4, p. 148].[2]

After speaking with Ms. Starr, Ms. LaGatta received a phone call from her mother, Gloria Glad, informing her that Mimi Wilson, the HR Director of Cyber School, had just called her. Mrs. Glad was concerned about Ms. LaGatta because she did not know that she had decided to drive to Harrisburg. Mrs. Glad then called Ms. Wilson back and informed her that Ms. LaGatta was suffering from bipolar disease.[3] [Doc. No. 24, Ex. 4, p. 158; Doc. No. 24, Ex. 13,

---

2

The parties dispute whether Dr. Trombetta had given Ms. LaGatta Thursday and Friday off. Ms. LaGatta contends that he did; defendant states that Dr. Trombetta instructed her to return on the morning of Friday, August 24, 2007 for an additional meeting.

3

At that time, it is unclear whether Ms. LaGatta had actually received such a diagnosis. In fact, it is not clear from the record whether Ms. LaGatta has ever actually been diagnosed with having bipolar disorder. At a minimum, the record is devoid of any medical reports or doctors' opinions to that effect.

p. 23].  Mrs. Glad asked Ms. Wilson not to tell anyone at Cyber School that Ms. LaGatta was bipolar.

The following Monday, August 27, 2007, Ms. LaGatta called Ms. Wilson, who told her not to come back to work until further notice.  Ms. Wilson then contacted Ms. LaGatta again to ask her to come in on Wednesday, August 29, 2007 for a 9:00 a.m. meeting.  At that meeting were Ms. Wilson and Mr. LaQuinta, as well as security personnel.  Ms. Wilson presented Ms. LaGatta with a notice of suspension, which stated: "Please be advised that the termination of your employment is being recommended to the Board of Directors of the Pennsylvania Cyber Charter School due to your insubordination and failure to follow directions as outlined below."  The letter then specifically referenced the following instances as grounds for Ms. LaGatta's suspension, all of which occurred during the month of August 2007: 1) failure to timely respond to her supervisor's request for a list of vacation dates; 2) failure to discontinue working on a project after being instructed to stop; 3) taking off two days despite a "blackout" period prohibiting scheduling time off except for illness or emergency; and 4) using her cellular phone at work for personal calls. [Doc. No. 24, Ex. 15, pp. 1-2].  The suspension letter did not cite the August 24, 2007 meeting that Ms. LaGatta purportedly missed.  Ms. LaGatta denied the allegations.

Following this meeting, Ms. LaGatta was placed on unpaid

6

suspension pending a recommendation to the School Board that she be terminated. While on unpaid suspension, Ms. LaGatta spoke with various Cyber School employees who heard that she was having a meltdown and was "crazy." [Doc. No. 24, Ex. 5, p. 181].

On September 28, 2007, Ms. LaGatta received a letter terminating her employment with the Cyber School. On September 11, 2008, Ms. LaGatta filed this lawsuit.

Additional facts shall be provided as necessary.

## II. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"[T]he mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is

such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

The United States Supreme Court has "emphasized, [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations omitted) (quoting Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

"A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and requires entry of summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In other words, in defending against summary judgment, a party cannot simply re-assert the facts alleged in the complaint; instead, he must "go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotations omitted).

It is on this standard that the court has reviewed the instant motion for summary judgment and briefs filed in support of and opposition thereto. For the reasons set forth below, the court

will grant in part and deny in part Cyber School's motion.

## III. DISCUSSION

Cyber School moves for summary judgment on two grounds. First, Cyber School argues it did not terminate Ms. LaGatta because of her actual disability, record of disability or because they regarded her as disabled. Second, Cyber School argues that Ms. LaGatta never requested an accommodation for her alleged disability. The court shall address each argument in turn.

### A. Termination

Under the ADA, a covered employer may not "discriminate against a qualified individual with a disability because of that disability in regard to discharge and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).[4] A plaintiff may establish a successful discrimination claims by either direct evidence of discrimination or indirect evidence that creates an inference of discrimination under the burden-shifting framework of

---

[4]

Congress recently amended the Americans with Disabilities Act, effective on January 1, 2009. Those changes extended the ADA's definition of "qualified individual with a disability" to a broader class of individuals. Courts have held that the amendments do not apply retroactively. See Bialko v. Quaker Oats, No. 08-0364, 2010 WL 1330285 at *8, n.6 (M.D. Pa. Mar. 30, 2010). Because the events of this lawsuit occurred before January 1, 2009, the court's analysis is based on the prior version of the act.

9

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[5]

Here, there is no direct evidence of discrimination; therefore, the burden-shifting framework must be used. Under <u>McDonnell Douglas</u>, Ms. LaGatta must first establish a <u>prima</u> <u>facie</u> case of discrimination by a preponderance of the evidence. <u>Stewart</u> <u>v. Rutgers</u>, 120 F.3d 426, 432 (3d Cir. 1997). In order to prove a <u>prima</u> <u>facie</u> case of disability discrimination under the ADA, Ms. LaGatta must establish that she: 1) is a member of a protected class (i.e., is disabled under the ADA); 2) is qualified to perform the essential functions of her job; and 3) has suffered an adverse employment action as a result of discrimination. <u>Gaul v. Lucent</u> <u>Techs., Inc.</u>, 134 F.3d 576, 580 (3d Cir. 1998).[6]

If Ms. LaGatta establishes a <u>prima</u> <u>facie</u> case, the burden then shifts to Cyber School to articulate a legitimate, nondiscriminatory reason for its employment action. <u>McDonnell</u>, 411 U.S. at 802. If Cyber School answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, then the burden of production "rebounds to the plaintiff,

---

[5]

This burden-shifting test was first announced in a Title VII racial discrimination case, but has since been utilized in a variety of contexts, including under the ADA. <u>Taylor v.</u> <u>Phoenixville School Dist.</u>, 113 F. Supp. 2d 770, 776, n.3 (E.D. Pa. 2000).

[6]

Cyber School does not argue whether Ms. LaGatta was otherwise qualified for the job or that she was fired; therefore, the court will focus only on whether Ms. LaGatta is a disabled person within the meaning of the ADA.

10

who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000). Cyber School is entitled to summary judgment if there remains no genuine issue of material fact at any level of this framework. Sherrod v. Philadelphia Gas Works, 209 F. Supp. 2d 443, 449 (E.D. Pa. 2002). The ultimate burden of persuading the trier of fact that Cyber School intentionally discriminated remains at all times with Ms. LaGatta. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Under the ADA, a person has a disability if: 1) his or her impairment substantially limits one or more of the person's major life activities, 2) the person has a record of such impairment, or 3) if he or she is regarded as having such an impairment. 42 U.S.C. § 12102(2).

Here, Ms. LaGatta does not allege that she has a record of disability. [See Opp. To Mtn. For Sum. J., Doc. No. 28, p. 16, n.11]. Therefore, the court will address Cyber School's arguments as to Ms. LaGatta's actual and regarded as claims.


1. Actual Disability

Whether a person has a disability under the ADA is an individualized inquiry. See Bragdon v. Abbott, 524 U.S. 624,

641-642 (1998) (declining to consider whether HIV infection is a per se disability under the ADA); 29 C.F.R Pt. 1630, App.§ 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual").

Under the ADA, a person has a disability if his or her impairment substantially limits one or more of the person's major life activities. 42 U.S.C. § 12102(2). Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An individual is considered to be substantially limited if he or she is (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) is significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity. Id. at § 1630.2(j). In determining whether an individual is substantially limited in a major life activity, the following factors should be considered: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or

long-term impact of or resulting from the impairment." Id. at §§ 1630.2(j)(2)(i)-(iii).

Furthermore, with respect to the major life activity of working, the EEOC regulations state:

> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.*

29 C.F.R. § 1630.2(j)(3)(i) (emphasis added).

It is also insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002). Instead, the ADA requires those "claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999).

In this case, Ms. LaGatta alleges that she has bipolar disorder, a recognized mental impairment under the ADA. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). She claims that it has affected her ability to work. Ms. LaGatta claims that when manic, she was unable to recognize her symptoms,

13

and that she was irritable, engaged in erratic behavior, and was confrontational with her co-workers. She attributes all of these symptoms to her mania.

However, we note that Ms. LaGatta also testified that her disability did not affect her ability to actually do her job:

> Q: Do you ever recall any of those [depressive] episodes interfering with your ability to perform your job at the Cyber School?
>
> A: I struggled through the depressive episodes, but it didn't affect my work; to my knowledge.
>
> [Doc. No. 24, Ex. 6, pp. 233-34].
>
> ***
>
> Q: So do you feel that your depression or mental health, generally speaking, at that time was affecting your ability to do your job? And I'm limiting this to the summer of 2007.
>
> A: I did not feel that it was affecting my job.

[Doc. No. 24, Ex. 6, p. 204].

Ms. LaGatta does not assert that she could not perform her own job, let alone that she could not perform a class of jobs or a broad range of jobs in various classes. She has also not produced any medical evidence demonstrating that her alleged disability substantially impaired her ability to work. In fact, it is unclear as to whether Ms. LaGatta has actually ever been diagnosed as bipolar, or whether it is based on her own diagnosis:

14

Q: Did Dr. Frye diagnose you with bipolar disorder during your appointment on September 6, 2007?

A: I don't recall him verbally telling me that.

\*\*\*

Q: When did you first get a diagnosis of bipolar disorder?

A: It was more of me accepting the fact that I had bipolar disorder from discussions of mania. They were associated that I recognized from how I was being treated that it was bipolar disorder.

\*\*\*

Q: Has any doctor ever told you, Ms. LaGatta, you have bipolar disorder?

A: I don't recall specifically them saying it in that fashion, if there was a different name from it, or hypomania I have heard mentioned, depression with periods of hypomania.

[Doc. No. 24, Ex. 6, pp. 216-220].

In conclusion, while Ms. LaGatta may have had difficulty at work with her fellow employees and supervisors, there is no evidence on the record that bipolar disorder was the cause of those difficulties. Nor has Ms. LaGatta demonstrated an inability to work a range of jobs. Ms. LaGatta's own testimony demonstrates that her bipolar disorder did not affect her major life activity of working. Because Ms. LaGatta has not established the first element of her prima facie case, i.e. that she is a member of a protected class, the court will grant Cyber School's motion for summary judgment as to Ms. LaGatta's actual disability claim.

15

2. <u>Regarded As</u>

Cyber School next argues that it did not regard Ms.
LaGatta as disabled. A plaintiff is entitled to the protection of
the ADA even if she does not actually have a substantially limiting
impairment, as long as she can show that her employer regarded her
as having such an impairment. <u>Wilson v. Pennsylvania State Police
Dept.</u>, 964 F. Supp. 898, 909 (E.D. Pa. 1997) (citing 29 C.F.R. §
1630.2(l)). A person is "regarded as" having a disability if s/he:

> (1) Has a physical or mental impairment that
> does not substantially limit major life
> activities but is treated by the covered
> entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that
> substantially limits major life activities
> only as a result of the attitudes of others
> toward such impairment; or
>
> (3) Has [no such impairment] but is treated by
> a covered entity as having a substantially
> limiting impairment.

<u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 381 (3d Cir. 2002)
(quoting <u>Taylor v. Pathmark Stores, Inc.</u>, 177 F.3d 180, 187 (3d
Cir. 1999) (quoting 29 C.F.R. § 1630.2(1))). The analysis under
the "regarded as disabled" standard focuses not on the plaintiff's
actual abilities, "'but rather on the reactions and perceptions of
the persons interacting or working with him.'" <u>Bialko v. Quaker
Oats</u>, 2010 WL 1330285 at *12 (M.D.Pa. March 30, 2010) (quoting
<u>Robinson v. Lockheed Martin Corp.</u>, 212 F. App'x 121, 125 (3d Cir.
2007)). "The mere fact that an employer is aware of an employee's

16

impairment is insufficient to establish that the employee was regarded as disabled or that such perception caused the adverse employment action." Endres v. Techneglas, Inc., 139 F. Supp. 2d 624, 636 (M.D. Pa. 2001); Kelly v. Drexel Univ., 94 F. 3d 102, 109 (3d Cir. 1996). "In 'regarded as' cases, the employer must perceive the individual as having an actual disability under the ADA.'" Boyce v. Commw. of Pennsylvania, No. 04-110, 2006 WL 3386626, at *8 (W.D.Pa. Nov. 22, 2006).

Before the August 28, 2007 meeting, there is no evidence that Ms. LaGatta had ever been informed that her job was in jeopardy. In fact, until July 2007, Ms. LaGatta had only received two disciplinary notices, neither of which resulted in disciplinary action being taken against her. During their July 17, 2007 meeting, at which Ms. LaGatta requested to be transferred to a different position, Mr. LaGatta never indicated her job was in trouble. According to Ms. LaGatta, he stated that he hated to lose her. [Doc. No. 24, Ex. 3, p. 52].

There is also evidence suggesting that Ms. LaGatta's behavior was unusual in the time leading up to her suspension. Ms. Anthony, who became Ms. LaGatta's supervisor after Ms. LaGatta returned to her call representative position, testified about an incident that occurred during a thunderstorm:

> We were having a bad thunderstorm, electrical storm, and she got very boisterous to me. She wanted me to make an executive decision to let the office go home several times. She was out

> of control . . . I told everybody to sit back
> down and just do your work until 4:00. Kim
> was screaming, slammed her laptop on the desk,
> threw her coat down, and started smacking
> herself in the head saying, you need to make
> an executive decision. This is wrong.

[Doc. No. 29-8, pp. 40-41].

Similarly, Mr. LaQuinta, Ms. LaGatta's supervisor, testified that Ms. LaGatta was always in "crisis mode." "There was always some type of turmoil about what she wanted to do in her daily responsibilities at work or with other employees or something to that effect while the rest of the department sat there and did exactly what they were supposed to do all day long . . . There was always some issue that she couldn't [handle]." [Doc. No. 29-3, p. 104-05].

Furthermore, Brenda Starr, Dr. Trombetta's secretary, noted Ms. LaGatta's strange behavior when she telephoned Ms. LaGatta on August 24th to inform her that she had missed the meeting:

> A: I asked her why she was going to
> Harrisburg, and she just kind of laughed. And
> she was talking to somebody. I wasn't sure
> who she was talking to. I said, "Kim, is
> somebody with you?" She told me she was
> talking to her dog, and her and her dog were
> going to Harrisburg.
>
> ***
>
> Q: How would you describe the tone of her
> voice on the phone when you were talking to
> her?
>
> A: She was laughing. And it just didn't sound

18

> like her usual laugh . . . I didn't seem like
> the Kim that I had talked to before.

[Doc. No. 24-12, pp. 29-31].

The court therefore finds that Ms. LaGatta has satisfied her prima facie case. As a result, the burden shifts back to Cyber School to show a legitimate, non-discriminatory reason for its employment decision. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). Here, Cyber School contends that it fired Ms. LaGatta for insubordination, the reasons for which were stated in its August 28, 2007 suspension letter: 1) failure to timely respond to her supervisor's request for a list of vacation dates; 2) failure to discontinue working on a project after being instructed to stop; 3) taking off two days despite a "blackout" period prohibiting scheduling time off except for illness or emergency; and 4) using her cell phone at work for personal calls. [Doc. No. 24, Ex. 15, pp. 1-2]. The court finds that Cyber School has satisfied its relatively light burden of showing a legitimate, non-discriminatory reason for its employment decision.

As a result, the burden shifts back to Ms. LaGatta to demonstrate that those reasons were merely pretext for unlawful discrimination. To do so, "plaintiff must point to some evidence, direct or circumstantial, from which the fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause

19

reason was more likely than not a motivating or determinative cause of the employer's action." Drwal v. Borough of West View, 617 F. Supp. 2d 397, 413 (W.D. Pa. 2009).

Here, Ms. LaGatta argues that the reasons offered in her termination letter were merely pretext for firing her on the basis of her perceived bipolar disorder. In support, Ms. LaGatta notes that Mr. LaQuinta has recommended the termination of two other employees besides Ms. LaGatta. The first engaged in online sex while at work; the second engaged in disruptive behavior, including singing and engaging in verbal disagreements with customers over the phone. [Doc. No. 29, Ex. 3, pp. 60-63]. In the later case, the employee's conduct occurred over a six-month period. In contrast, the reasons cited in Ms. LaGatta's suspension letter occurred over approximately a three-week period, all during the month of August 2007.[7]

Furthermore, as noted, there is no evidence that Ms. LaGatta's job was in jeopardy during any of her July and August meetings with Mr. LaQuinta and Dr. Trombetta. However, a week after her August 22, 2007 meetings, Cyber School suspended Ms. LaGatta without pay. In the interim, the head of Human Resources learned that Ms. LaGatta could be bipolar, and when Ms. LaGatta returned to the office on August 28, she was greeted by security

[7]

In fact, the suspension letter does not even mention Ms. LaGatta's lack of attendance at the alleged August 24, 2007 meeting with Dr. Trombetta.

20

who Cyber School had hired. [Doc. No. 29, Ex. 3]. A reasonable fact finder could therefore conclude that the reasons given in Ms. LaGatta's suspension letter were merely pretext for terminating her because they believed her to be bipolar or suffering from some type of mental instability.

This case is similar to that of <u>Bullock v. Balis & Co.,</u> <u>Inc.</u>, No. 99-748, 2000 WL 1858719 (E.D. Pa. Dec. 19, 2000). In that case, Mr. Bullock informed his employer that he might have Attention Deficit Disorder as an explanation for his numerous behavioral problems at work, even though he had not yet been diagnosed as such. Several days later, his employer fired him. The court denied Balis' motion for summary judgment, finding that a reasonable jury could infer that "upon learning that Bullock might have a disability, Balis reviewed his history of performance problems, considered it symptomatic of his ADD, and fired him because they regarded him as having a disability that substantially interfered with his ability to work." <u>Bullock</u>, at *5. The court found that "the timing of the notice, not merely the fact of the notice itself, calls Balis's decision to fire (Bullock) into question." <u>Id</u>.

Similarly, in this case a reasonable jury could conclude that upon learning from Ms. LaGatta's mother that she might have bipolar disorder, Cyber School reviewed her history of performance problems and concluded that she did, in fact, have a disability

21

that substantially interfered with her ability to work. The close temporal proximity between Cyber School becoming aware that Ms. LaGatta may have been disabled and her suspension without pay precludes entry of summary judgment on Ms. LaGatta's regarded as claim.

Therefore, considering all evidence in light most favorable to Ms. LaGatta, the court concludes that genuine issues of material fact exist as to whether Cyber School regarded her as disabled. The court will therefore deny Cyber School's motion for summary judgment on this ground.

## B. Accommodation Request

An employer commits unlawful discrimination under the ADA if the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). Similarly, the EEOC's interpretive guidelines provide that: "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible,

22

interactive process that involves both the employer and the [employee] with a disability." Taylor, 184 F.3d at 311 (quoting 29 C.F.R. Pt. 1630, App. § 1630.9 at 359).

Cyber School contends that Ms. LaGatta has not established that she ever made an accommodation request. In response, Ms. LaGatta argues that on July 17, 2007 and August 22, 2007 she requested to be transferred out of the call center. She also contends that she requested to be considered for transfer to the Harrisburg office.

However, throughout her deposition, Ms. LaGatta repeatedly made clear that she never requested an accommodation of her disability during her employment with Cyber School.

> Q: Now, when you requested the move out of the coordinator position and you had this meeting with Mr. LaQuinta, any other discussions regarding your move, did you at any time discuss with Mr. LaQuinta that you need an accommodation for any health condition or medical condition you had?

> A: No, I did not.

[Doc. No. 24, Ex. 4, p. 55].

Cyber School cannot be held liable for failing to reasonably provide an accommodation that was never requested. See Taylor, 184 F.3d at 313 ("Employers cannot assume employees are disabled and need accommodations.").[8] As a result, the court will

---

[8]

Furthermore, in her EEOC intake questionnaire, Ms. LaGatta stated that she did not need any accommodation to perform her job. [Doc. No. 24, Ex. 17, p. 5].

23

grant Cyber School's motion for summary judgment as to Ms. LaGatta's failure to accommodate claim.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY A. LAGATTA,                    )
          Plaintiff,                    )
                                        )
     v.                                 )    Civil Action No. 08-1268
                                        )
THE PENNSYLVANIA CYBER                  )
CHARTER SCHOOL,                         )
                                        )
          Defendant.                    )

ORDER

And now, on this **26** day of June, 2010, IT IS HEREBY

ORDERED that defendant's motion for summary judgment is DENIED in

part and GRANTED in part.  The motion is GRANTED as to plaintiff's

actual disability and failure to accommodate claims. The motion is

DENIED, and the case will go to trial, as to whether defendant

regarded plaintiff as disabled and terminated her employment on

that basis.

BY THE COURT:

cc: All parties of record