IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY A. LAGATTA,          )
                              )
          Plaintiff,          )
                              )
     v.                       )    Civil Action No. 08-1268
                              )
THE PENNSYLVANIA CYBER        )
CHARTER SCHOOL,               )
                              )
          Defendant.          )

MEMORANDUM

Gary L. Lancaster                    September __, 2011
Chief Judge.

This is an action in employment discrimination.
Plaintiff, Kimberly A. LaGatta, contends that her former
employer, The Pennsylvania Cyber Charter School, terminated her
in August of 2007 due to her mental health disability, in
violation of the Americans with Disabilities Act ("ADA").
LaGatta seeks back pay, reinstatement, reimbursement of medical
expenses, compensation for lost retirement contributions, and
attorneys' fees [doc. no. 44].

In an opinion issued on June 30, 2010, we granted, in
part, the Cyber School's motion for summary judgment and
disposed of LaGatta's actual disability and failure to
accommodate claims as a matter of law. We denied the Cyber
School's motion as to LaGatta's "regarded as disabled" claim.
After we issued that opinion, and just before trial was

scheduled to begin in December of 2010, LaGatta's counsel notified the Cyber School's counsel for the first time that LaGatta had been awarded Social Security Disability benefits on May 19, 2010. As a result, we reopened discovery and invited further summary judgment briefing regarding the effect that the award of Social Security Disability benefits might have on LaGatta's ADA claim.

The Cyber School has filed a motion for summary judgment arguing that LaGatta's receipt of Social Security Disability benefits forecloses her ADA claim because she cannot prove that she is a qualified individual, i.e., that she is able to perform the essential functions of her job, with or without reasonable accommodation. [doc. no. 55]. For the following reasons, we grant the Cyber School's motion and enter judgment in its favor on the one remaining claim.

## I. FACTUAL BACKGROUND

Detailed facts regarding LaGatta's employment and termination can be found in this court's June 26, 2010 opinion [doc. no. 38]. We discuss here only those undisputed facts that are relevant to disposing of the pending motion.

On Wednesday, August 29, 2007, the Cyber School hand delivered a letter to LaGatta suspending her, without pay, and notifying her that the Cyber School's Board would be considering

her termination at its next meeting. The reasons given for this disciplinary action were insubordination and failure to follow directions. About a month later, LaGatta received written notification that the Board had decided to terminate her employment at its September 21, 2007 meeting.

LaGatta initiated several proceedings as a result of her suspension and eventual termination. First, on September 2, 2007, she applied for unemployment compensation, which she was awarded on October 25, 2007. Second, on November 5, 2007, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Third, in May of 2008, while her discrimination charge was still being investigated by the EEOC, LaGatta applied for Social Security Disability benefits, which were eventually awarded retroactive to September 2, 2007 on May 19, 2010. Finally, on September 11, 2008, after receiving a Right to Sue letter from the EEOC but before receiving any decision from the Social Security Administration on her application for Social Security Disability benefits, LaGatta filed the instant lawsuit alleging that the Cyber School violated the ADA by discriminating against her based on her mental health disability.

LaGatta completed various forms and questionnaires, and made numerous factual statements while pursuing each of the above remedies and benefits. Before the EEOC, LaGatta described her disability as "depression" with episodes that "reoccur," but which could be in "remission for months/years" with treatment. [doc. no. 59-10 at 2 (ADA Intake Questionnaire)]. She explained that during the "active stage" of her disability she is unable to concentrate or care for herself, and has difficulty with memory and communicating with others. [Id. at 2, 3]. She stated that she suffered "two non-severe episodes" during the two years that she worked for the Cyber School. [Id.]. However, LaGatta indicated that her depression "did not affect my ability to perform my job[]" and that she "was able to perform all job-related functions." [Id. at 3, 5]. She went on to state that "no restrictions placed on me by doctor" and "no accomodations [sic] needed" or "requested." [Id. at 3, 5, 6].

LaGatta provided the EEOC with the names of four medical facilities that had treated her depression. This medical history indicates that LaGatta had been treated for depression continuously since she was reportedly first diagnosed in 1991. [Id. at 2, 4]. Notably, although LaGatta had been diagnosed with bipolar disorder two months before completing the EEOC ADA Intake Questionnaire, she listed her disability on that form as "depression," not bipolar disorder. [doc. no. 61

(Plaintiff's Response to Defendant's Concise Statement of Material Facts) at ¶ 51; doc. no. 59-10 at 4, 6 (ADA Intake Questionnaire)]. In fact, at the EEOC, she specifically denied that she had such a disorder. [Id.]. The statements LaGatta made to the EEOC regarding the effect, or lack thereof, that her disability had on her job at the Cyber School are in accordance with LaGatta's deposition testimony in this case that her depressive episodes never affected her work and that she never requested or needed any accommodation from the Cyber School in order to do her job. [doc. no. 38 at 14, 22-24].

LaGatta's statements in support of her application for Social Security Disability benefits tell a different story. Before that governmental agency, LaGatta claimed that she was rendered totally disabled upon being diagnosed with bipolar disorder days after being suspended by the Cyber School. [doc. no. 59-12 at 1 (Application Summary for Disability Insurance Benefits), 4 (Disability Report)]. She also told the Social Security Administration that her mental health disability first interfered with her ability to work in September of 1991, and caused her to make job-related changes in 1995, 1996, 1998, 1999, 2002, 2005, and 2007, and that she "stopped working" on August 22, 2007, and "became unable to work because of [her]

disabling condition on September 2, 2007."[1] [Id.].

LaGatta received notice that the Social Security Administration had denied her application for disability benefits about two weeks after she filed this lawsuit. Less than two months later, while this ADA case was pending, LaGatta appealed the Social Security Administration's denial on the ground that "[m]y conditions continue to keep me from working." [doc. no. 59-14 at 1 (Request for Hearing by Administrative Law Judge)]. Notably she filed that appeal without the aid of, and without even informing, her counsel of record in this case.

On May 14, 2010, the Administrative Law Judge held an appeal hearing, at which LaGatta appeared telephonically. Just five days later the ALJ issued a fully favorable notice of decision finding that LaGatta had been disabled since September 2, 2007, which is the date LaGatta self-selected as her date of disability for Social Security Disability benefits purposes, due to the "severe impairments" of "major depression and bipolar disorder." [doc. no. 59-11 at 6, 8 (Social Security Decision)]. The Social Security Administration concluded that LaGatta was unable to perform any past relevant work and that there were no jobs in the national economy that LaGatta could perform. [Id.

---

[1] LaGatta was suspended at a meeting held at the Cyber School on Wednesday, August 29, 2007. September 2, 2007 is the Sunday after that meeting and is three days before the September 6, 2007 appointment with Dr. Frye at which he diagnosed LaGatta with bipolar disorder. LaGatta offers no explanation as to why she selected September 2nd as the date on which she became totally disabled and unable to work.

at 9, 10 (Social Security Decision); see also doc. no. 59-11 at 23 (May 14, 2010 Social Security Hearing Transcript)].

## II. LEGAL AUTHORITY

### A. Summary Judgment

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). If the moving party meets its burden of proving that no genuine issue of material fact exists, then the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51

7

(2000) (citing cases).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue under the governing substantive law. See Anderson v. Liberty Lobby, 477 U.S. at 248-49. Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 322-23.

In summary, the inquiry in ruling on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is such that the movant must prevail as a matter of law.

B. Americans with Disabilities Act

To establish a prima facie case of discrimination under the ADA, an employee must show that she: (1) is disabled within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) suffered an adverse employment action. Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998). An employee can satisfy the first element by proving that: (1) she suffers from a physical or mental impairment that substantially limits one or more major life activities; (2) she has a record of such impairment; or (3) she is regarded as having such an impairment. 42 U.S.C. § 12102(2). As discussed above, LaGatta's allegation that the Cyber School regarded her as disabled is the only one that survived following this court's first summary judgment opinion.[2] LaGatta bears the burden of proof on each of these three elements, including that she is an otherwise qualified individual under the ADA. Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996) (citing Buckingham v. United States, 998 F.2d 735, 739-40 (9th Cir. 1993)).

---

[2] That LaGatta can now only satisfy the first element of her prima facie case by proving that she was "regarded as disabled" is immaterial to the instant motion, which turns on the second element of the prima facie case; i.e., that LaGatta was a qualified individual.

C. Effect of an Award of Social Security
   Disability Benefits on an ADA Claim

In order to obtain Social Security Disability benefits, an employee must prove that she is unable to sustain any gainful employment in the national economy, i.e., that she is "totally disabled". 42 U.S.C. §§ 423(a)(1), (d)(2)(A). In order to succeed on an ADA claim, an employee must establish that she is able to perform the essential functions of her previous job, with or without reasonable accommodations, i.e., that she is a "qualified individual." 42 U.S.C. § 12111(8); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999). There is an obvious and inherent contradiction between these two legal positions.

As such, the United States Supreme Court has held that in order for an employee who has received Social Security Disability benefits to establish a prima facie case under the ADA and survive summary judgment, she must offer a "sufficient explanation" to allow a reasonable jury to conclude that her context-related legal contention that she is too disabled to work for purposes of the Social Security Act is "consistent with her ADA claim that she could 'perform the essential functions' of her previous job…." Cleveland, 526 U.S. at 797-98, 805-06.

10

By contrast, if an employee makes contradictory statements of pure fact before the Social Security Administration and before the court hearing her ADA claim, or another governmental agency, then we are to apply the "usual judicial estoppel analysis." Detz v. Greiner Indus., Inc., 346 F.3d 109, 116 (3d Cir. 2003). In doing so, we must determine whether the statements are actually inconsistent, whether they were made in bad faith, and whether judicial estoppel is an appropriate remedy. Id. at 115.

## III. DISCUSSION

LaGatta argues that her pursuit and receipt of Social Security Disability benefits does not foreclose her ADA claim in this case because there is no conflict between her Social Security contention that she became totally disabled after she was suspended by the Cyber School and her ADA contention that she was a qualified individual who was capable of performing her job with the Cyber School at the time she was suspended [doc. no. 60 at 6]. LaGatta argues that she did not become disabled until she was diagnosed with bipolar disorder several days after her suspension in September of 2007. According to LaGatta, her suspension on August 29, 2007 is what triggered her bipolar disorder, causing her to become unable to work. LaGatta contends that before this triggering episode, although she had

11

been diagnosed with and treated for depression and a mild form of bipolar disorder since 1991, she could work full-time without accommodations, but after that triggering episode she instantaneously could no longer maintain any gainful employment in the national economy.

To summarize, LaGatta is claiming that she did not become disabled until she suffered from bipolar disorder, and because she was not diagnosed with bipolar disorder until after she was suspended she can satisfy the ADA requirement of being a "qualified individual" as of August 29, 2007, and the Social Security Act requirement of being "totally disabled" and unable to work as of September 2, 2007.

As an initial matter, LaGatta is correct that for purposes of the ADA, we assess whether an employee is a "qualified individual" who can perform the essential functions of her job as of the date of the adverse employment action. Gaul, 134 F.3d at 580 (citing 29 C.F.R. Pt. 1630, Appx. at § 1630.2(m)). In this case, that date is August 29, 2007. LaGatta is also correct that it is legally plausible for an employee to obtain Social Security Disability benefits, and also pursue an ADA claim on the ground that the disability worsened after the adverse employment action, making the employee incapable of sustaining gainful employment after the date of the adverse action, while also being a qualified individual for

12

purposes of the ADA at the time of the adverse employment action. Cleveland, 526 U.S. at 805; Detz, 346 F.3d at 117.

A review of the record in this case, however, indicates that LaGatta has failed to present the evidence needed to prevail on her ADA claim after being awarded Social Security Disability benefits. The only evidence that LaGatta has presented to support her claim that she was able to perform the essential functions of her job without any accommodation on August 29, 2007, but was rendered totally disabled and unable to sustain any gainful employment four days later are two pharmacologic management reports from Dr. Frye; one dated August 16, 2007 and one dated September 6, 2007. The September 6, 2007 report diagnoses LaGatta with bipolar disorder; the August 16, 2007 report does not.

However, the appearance of the words "bipolar disorder" in the September report alone does not satisfy LaGatta's obligation under Cleveland to explain how her ADA contention is consistent with her Social Security Act contention. The diagnosis of bipolar disorder, instead of cyclothymic disorder, is insufficient to prove that LaGatta was able to perform her job at the Cyber School before the diagnosis

but was unable to sustain any employment thereafter.[3] This is especially true because cyclothymic disorder, which is the diagnosis in Dr. Frye's August report, is simply a mild form of bipolar disorder. MEDLINEplus Medical Dictionary, available at www.nlm.nih.gov/medlineplus/mplusdictionary.html; Taber's Cyclopedic Medical Dictionary (20th ed. 2001).[4]

Likewise, LaGatta's independent summary of the "medical science" related to bipolar disorder in her opposition brief does not satisfy her obligation to offer a sufficient explanation to allow a reasonable jury to reconcile her contention that she is too disabled to work with her contention that she could perform the essential functions of her job. [doc. no. 60 at 8-9]. This summary contains no admissible evidence from which a reasonable jury could conclude that an employee, who had a sixteen year history of treatment for depression and a prior diagnosis of a mild form of bipolar disorder, was instantaneously rendered totally disabled upon being diagnosed with a more severe form of bipolar disorder.

---

[3] Notably, LaGatta has not listed any of her treating physicians or a medical expert as witnesses in her Revised Pre-Trial Statement, and thus, would have no medical evidence, other than the reports themselves, assuming for purposes of this motion that she could establish their admissibility, regarding her September 2007 diagnosis [doc. no. 44].

[4] A court may rely on and take judicial notice of dictionary definitions. FED. R. EVID. 201; Buczek v. Continental Cas. Ins. Co., 378 F.3d 284, 291 (3d Cir. 2004); Deutsch v. U.S., 67 F.3d 1080, 1085-86 (3d Cir. 1995); Azoplate Corp. v. Silverlith, Inc., 367 F.Supp. 711, 731 (D. Del. 1973).

14

In fact, LaGatta's own statements and explanations about her mental health condition contradict that conclusion. LaGatta described her depression as consisting of "active stages" or "episodes," followed by periods of remission that can last "months/years" with treatment. [doc. no. 59-10 at 2 (ADA Intake Questionnaire)]. According to LaGatta, even during an "episode," she could perform all "job-related functions" at the Cyber School without any accommodations, or medical restrictions. [Id. at 3-6]. Based on this first-hand account of her mental health disorder, combined with a total lack of admissible evidence, a jury could not reasonably conclude that LaGatta has presented sufficient evidence to prove that her suspension from the Cyber School on August 29, 2007 rendered her "totally disabled."[5]

In summary, LaGatta has presented no evidence from which a reasonable jury could conclude that her condition changed so significantly between August 29, 2007 and September 2, 2007 that she lost the ability to do her job at the Cyber School, or any other job, in that short period of time. Instead, the record reflects that before she was suspended, for purposes of this lawsuit and the EEOC charge of discrimination,

---

[5] Notably, LaGatta's separation from John Seretti Chevrolet on July 9, 2005, about which she filed a charge of discrimination with the EEOC, did not render her unable to perform her job with the Cyber School, which began only three days later on July 12, 2005. [doc. no. 59-9 at 1 (Charge of Discrimination); doc. no. 59-10 at 7 (ADA Intake Questionnaire); doc. no. 59-12 at 5 (Disability Report)].

15

her depressive symptoms did not interfere in any way with her
ability to do her job. After she was suspended, for purposes of
obtaining Social Security Disability benefits, those depressive
symptoms became inexplicably and immediately so severe that it
was impossible for her to sustain any gainful employment in the
national economy.

LaGatta's explanation that before August 29, 2007 she
had never been diagnosed with bipolar disorder, and after
September 2, 2007 she had, is without consequence. She has
failed to present any evidence that a doctor's act of labeling
her sixteen year old mental health condition as bipolar disorder
instead of cyclothymic disorder caused her to become "total
disabled." LaGatta has failed to present any evidence that the
symptoms reflected in the September 2007 pharmacologic
management report are inconsistent with one of her self-
described depressive "active stage" "episodes." LaGatta has
failed to present any evidence to demonstrate how her illness in
September of 2007 differed from anything she had experienced
during her sixteen years of treatment for depression to allow a
jury to reasonably conclude that she was rendered totally
disabled in a span of four days. As such, LaGatta has failed to
meet her burden to present "sufficient evidence" to allow a
reasonable jury to find that her contradictory positions of
being a "qualified individual" one day and "totally disabled"

16

four days later are consistent. At summary judgment, LaGatta must do more than make a bare and conclusory statement that her diagnosis of bipolar disorder caused a total disability that did not exist four days earlier or at any time during the sixteen years prior.[6]

Because LaGatta has failed to offer sufficient evidence to support her explanation as to why her contention before the Social Security Administration that she is "totally disabled" is consistent with her contention under the ADA that she is a "qualified individual" we must grant the Cyber School's motion for summary judgment.

In addition, although not necessary to our decision, we also conclude that LaGatta has made contradictory statements of pure fact before the Social Security Administration and before this court, further barring her ADA claim under judicial estoppel. For example, although LaGatta was diagnosed with

---

[6] LaGatta's remaining "explanations" are no more than generalized statements of the applicable law. [doc. no. 60 at 10-12 (e.g., that the ADA considers accommodations and age, while the Social Security Act does not, and that recipients of Social Security Disability benefits are permitted to work on a trial basis)]. LaGatta has presented no evidence to demonstrate their applicability to this case. Motley v. New Jersey State Police, 196 F.3d 160, 166 (3d Cir. 1999) ("…simply averring that the statutory schemes differ is not enough to survive summary judgment in light of Cleveland"). For instance, LaGatta requests reinstatement and alleges that she could perform her duties at the Cyber School, with accommodations. However, she fails to identify what accommodations could be put in place to overcome the limitations identified by the Social Security Administration of: limited interaction with the public, peers, and supervisors; limited need to make complex decisions, to follow detailed instructions, and to cope with stress in emergency situations; and an inability to sustain an eight hour work routine. [doc. no. 59-12 at 22-23 (Social Security Hearing Transcript)]. As such, we dispose of them summarily.

17

bipolar disorder two months before completing her EEOC ADA Intake Questionnaire in November of 2007, she listed her disability on that form as "depression," not bipolar disorder, and, in fact, specifically denied that she had ever been diagnosed with bipolar disorder. [doc. no. 59-10 at 4, 6 (ADA Intake Questionnaire), doc. no. 61 at ¶ 6 (Plaintiff's Response to Defendant's Concise Statement of Material Facts)]. In contrast, as already summarized above, in this proceeding and before the Social Security Administration, LaGatta claims that her diagnosis of bipolar disorder in September of 2007 was what rendered her "totally disabled."

In addition, LaGatta reported to the EEOC that she never sought or needed an accommodation from the Cyber School, yet alleged before this court that the Cyber School had violated the ADA by refusing to make reasonable accommodations for her mental health conditions. [doc. no. 59-10 at 6 (ADA Intake Questionnaire); doc. no. 1 at ¶ 27 (Complaint); doc. no. 28 at 29-30 (LaGatta's Brief in Opposition to Motion for Summary Judgment)]. Likewise, she reported to the Social Security Administration that her mental health problems interfered with her ability to work since September 1991, yet consistently maintained before this court and the EEOC that her mental health conditions never affected her ability to perform her job-related duties for the Cyber School. [doc. no. 59-12 at 4 (Disability

18

Report); doc. no. 59-10 (ADA Intake Questionnaire); doc. no. 61 at ¶¶ 38, 41 (Plaintiff's Response to Defendant's Concise Statement of Material Facts)]. We find these factual statements, among others, to be actually inconsistent. Detz, 346 F.3d at 115.

We further find that they were made in bad faith. LaGatta has offered no plausible explanation for these contradictions, and in fact, has denied that she ever made any contradictory statements of fact. As demonstrated by the representative examples above, this is simply not true. Moreover, it is readily apparent that LaGatta has tailored her factual statements to advance her interests in whatever forum she was then appearing. We find it particularly egregious that LaGatta failed to inform this court, and perhaps even her own attorneys, of the fact that she appeared at a Social Security Administration appeal hearing and received a fully favorable notice of decision awarding her Social Security Disability benefits, retroactive to September 2007, while the first summary judgment motion was under advisement. Based on the facts before us, we find that LaGatta acted in bad faith in making these contradictory statements of fact.

Finally, we find that judicial estoppel is an appropriate remedy under the circumstances. LaGatta's actions have resulted in an additional discovery period and a second

19

summary judgment motion. Had settlement negotiations not unfolded as they had just prior to trial, it is certainly possible that we would have empaneled a jury and conducted a trial without knowledge that LaGatta had been awarded Social Security Disability benefits retroactive to September 2, 2007. LaGatta has placed substantial, unnecessary burdens on this court, as well as on her former employer and counsel, including her own. It is therefore appropriate to judicially estop LaGatta from proceeding before this court with her one remaining ADA claim.

## IV. CONCLUSION

For the forgoing reasons, we find that LaGatta has filed to produce the evidence required by Cleveland to avoid summary judgment. As such, we will grant the Cyber School's motion, enter judgment in its favor, and close the case.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY A. LAGATTA,           )
                               )
          Plaintiff,           )
                               )
     v.                        )     Civil Action No. 08-1268
                               )
THE PENNSYLVANIA CYBER          )
CHARTER SCHOOL,                )
                               )
          Defendant.           )

ORDER

AND NOW, this 6th day of September, 2011, IT IS HEREBY
ORDERED that The Pennsylvania Cyber Charter School's motion for
summary judgment [doc. no. 55] is GRANTED;

IT IS FURTHERED ORDERED that The Pennsylvania Cyber
Charter School's motion for leave to file a reply [doc. no. 62]
is DENIED;

The Clerk of Court is directed to mark this case
CLOSED.

BY THE COURT,

_____, C.J.

cc: All Counsel of Record